VAN DYNE–CROTTY, INC., Appellant,

v.

**WEAR–GUARD CORPORATION,**
Cross–Appellant.

**Nos. 90–1276, 90–1277.**

United States Court of Appeals,
Federal Circuit.

Feb. 25, 1991.

---

Gail L. Morrissey, Frost & Jacobs, Cincinnati, Ohio, argued, for appellant. With her on the brief, were James D. Liles and Kenneth B. Germain.

Milton Springut, Lieberman Rudolph & Nowak, New York City, argued, for cross-appellant. With him on the brief, were David A. Kalow and Kevin S. Rhoades.

Before RICH, NEWMAN, and MICHEL, Circuit Judges.

MICHEL, Circuit Judge.

Van Dyne–Crotty, Inc. ("Van Dyne–Crotty" or "VDC") appeals from the final decision of the United States Patent and Trademark Office, Trademark Trial and Appeal Board ("Board"), granting Wear–Guard Corporation's ("Wear–Guard") petition to cancel VDC's registration of the block letter trademark "CLOTHES THAT WORK" (No. 1,396,746). *Wear–Guard Corp. v. Van Dyne–Crotty, Inc.*, Can. No. 16,340 (TTAB Jan. 24, 1990). The Board based the cancellation on the grounds that concurrent use of VDC's registered trademark and of a series of marks first used by Wear–Guard would be likely to result in confusion, mistake, or deception and that the Wear–Guard series had priority of use over the VDC trademark. Because the Board, in addition, correctly rejected VDC's attempt to "tack" onto its registered mark the prior use of a later acquired, non-equivalent mark, we affirm.

## BACKGROUND

Van Dyne–Crotty and Wear–Guard both compete in the uniform and work clothes market. Their product lines range from jumpsuits and smocks to T-shirts, caps and aprons—all geared for use in the work place. VDC and Wear–Guard sell their clothing apparel through catalogs, trade magazines, and field sales representatives.

In addition, Wear–Guard operates its own chain of retail stores. Both companies plan to or have begun to expand their product lines to offer heavy duty clothing for purchase by individual consumers, rather than just employers, for use in everyday household work or weekend leisure activities.

On June 10, 1986, registration was issued to Van Dyne–Crotty for its block letter trademark "CLOTHES THAT WORK" with claimed first use dates of July 8, 1985 (in printed catalogs) and September 3, 1985 (affixed to wearing apparel). On April 24, 1987, Wear–Guard petitioned the Board for cancellation of the VDC registration. In its cancellation petition, Wear–Guard alleged that it had employed a series of facially similar marks—CLOTHING THAT WORKS, CLOTHES THAT WORK HARD, and CLOTHES THAT WORK OVERTIME —"as early as 1983 ... for diverse articles of wearing apparel and related accessories." *Wear–Guard*, slip op. at 2.

Following Wear–Guard's cancellation petition, in September 1988, VDC acquired the mark "CLOTHES THAT WORK. FOR THE WORK YOU DO" from Horace Small Manufacturing Company ("Horace Small"), a maker of uniforms and other work clothing, for $25,000. Horace Small began using its trademark in the mid–1970s. Although its products were similar to those of VDC and Wear–Guard, Horace Small targeted a substantially different market. Almost all Horace Small sales were in the wholesale rather than retail market, *i.e.*, Small's customers were distributors who resold the clothing to the final, or end-user, customer. Horace Small did not compete with either Wear–Guard or VDC; in fact, each was considered a potential customer, who, in turn, could sell its manufactures on the retail market.

Van Dyne–Crotty amended its pleadings before the Board to reflect its acquisition

of the Horace Small mark and further alleged, on the assumption that the registered and the Horace Small marks were legal equivalents, that by "tacking" on Horace Small's use since the mid–1970s of its "CLOTHES THAT WORK. FOR THE WORK YOU DO" mark to the "CLOTHES THAT WORK" mark, the VDC mark was in use prior to any of the Wear–Guard marks.[1]

Despite VDC's purchase of the Horace Small mark, the Board granted Wear–Guard's cancellation petition, ruling first that the VDC mark and the Wear–Guard series of marks were legal equivalents, then that at least one of the Wear–Guard marks was in use prior to when VDC commenced use of its "CLOTHES THAT WORK" mark, and that VDC could not "tack" Horace Small's prior use of its mark to the registered mark because, *inter alia*, they were not legal equivalents.

On appeal, Van Dyne–Crotty challenges only the Board's decision to disallow "tacking" of the priority rights of the Horace Small mark onto VDC's rights in the registered mark. Wear–Guard appeals the Board's decision to allow Van Dyne–Crotty to introduce evidence relating to the acquired mark, as to which Wear–Guard alleges it was unable to take testimony or depositions.

## DISCUSSION

Our jurisdiction to review final orders of the Trademark Trial and Appeal Board rests on 28 U.S.C. § 1295(a)(4)(B) (1988) (Federal Circuit has exclusive appellate jurisdiction over TTAB decisions).

### I

### A

Only the Board's determination that "CLOTHES THAT WORK. FOR THE

---

**1.** Although before acquiring the Horace Small mark, VDC did not concede priority of use to the Wear–Guard series, in its answer VDC only denied generally that the Wear–Guard marks had priority. Instead, VDC's position before the Board was that the marks were not legal equivalents, and, in any event, that Wear–Guard was precluded from challenging the registration by reasons of acquiescence, estoppel and laches. From the record, it appears that only after purchasing the Horace Small mark, VDC began to vigorously, and offensively, pursue the priority of use issue. On appeal, VDC has abandoned all its earlier positions, except on the "tacking" issue.

WORK YOU DO" and the registered mark, "CLOTHES THAT WORK," are not legal equivalents is seriously at issue.[2] In rather cursory fashion, the Board ruled that the marks were not confusingly similar and therefore not legal equivalents, because "[p]urchasers seeing these two marks would clearly differentiate them and would simply not consider them to be the same mark." *Wear–Guard,* slip op. at 7.

■ A determination by the Board that two marks are so confusingly similar that they constitute legal equivalents is a legal determination, and is not entitled to the same deference as a factual finding on review. *Cf. Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1565, 4 USPQ2d 1793, 1797 (Fed.Cir.1987) ("The uniform precedent of this court is that the issue of likelihood of confusion is one of law."); *In re Bed & Breakfast Registry,* 791 F.2d 157, 158, 229 USPQ 818, 818–19 (Fed.Cir.1986) (likelihood of confusion, on appeal from the Board, is reviewed for correctness as a matter of law).

Clearly then, and as both parties recognize, the threshold issue before us is whether the Horace Small trademark "CLOTHES THAT WORK. FOR THE WORK YOU DO" is the legal equivalent of VDC's "CLOTHES THAT WORK" mark for the purposes of "tacking" its prior use onto use of the Van Dyne–Crotty mark. Only if we were to conclude that the two marks *are* legal equivalents, would this court then be required to address such ancillary issues as whether the conveyance of the mark was, as Wear–Guard argues, a "naked assignment" amounting to little more than a sham, wherefore its prior use by Horace Small cannot be "tacked."

B

■ As the Board correctly noted, the standard of legal equivalence used in re-

viewing efforts to "tack" the prior use of one mark onto that of another is higher than that used in evaluating two competing marks. *Wear–Guard,* slip op. at 7. The previously used mark must be the legal equivalent of the mark in question or indistinguishable therefrom, and the consumer should consider both as the same mark. *Compania Insular Tabacalera v. Camacho Cigars, Inc.,* 167 USPQ 299, 303–04 (TTAB 1970). However, for the purposes of "tacking," even if the two marks are confusingly similar, they still may not be legal equivalents. *Id.* Instead, the marks must create "the same, continuing commercial impression," *Ilco Corp. v. Ideal Security Hardware Corp.,* 527 F.2d 1221, 1224, 188 USPQ 485, 487 (CCPA 1976), and the later mark should not materially differ from or alter the character of the mark attempted to be "tacked." *See* 1 J. Gilson, *Trademark Protection and Practice* § 3.03[1] at 3–67–68 (1990) ("What may seem minor to the trademark owner modifying his mark may, from the standpoint of maintaining continuous priority rights, result in an entirely new mark with its own, and later, priority.").

■ It does not appear that the Board entertained any other evidence concerning the legal equivalence of these two marks except for the visual or aural appearance of the marks themselves. However, no more was necessary. *Cf. In re E.I. DuPont DeNemours & Co.,* 476 F.2d 1357, 1361–62, 177 USPQ 563, 567–68 (CCPA 1973) (legal equivalence based on likelihood of confusion may be found simply on the similarity or dissimilarity of the marks in their entirety). Merely from review of the marks, it is clear that they create different commercial impressions.[3]

---

**2.** Since this court is affirming the Board's decision that the Horace Small mark is not the legal equivalent of the registered mark, and as Wear–Guard concedes, we need to address the evidentiary issues raised by the Wear–Guard cross-appeal only to the extent that they bear on our reasoning concerning the dispositive issues. We conclude that the Board acted within its discretion in admitting evidence of the Horace

Small mark and in failing to provide broader discovery than Wear–Guard requested.

**3.** We do not address, nor need we, whether the marks here *were* legal equivalents on the facts of this case. We only affirm the Board's finding that because the marks were not confusingly similar, they were not legal equivalents for the purposes of tacking.

VDC argues otherwise, claiming that the Board should have considered "CLOTHES THAT WORK" as simply the abbreviated version of "CLOTHES THAT WORK. FOR THE WORK YOU DO," both of which lead purchasers to believe the merchandise sold under either emanates from the same source. However, in its briefs and at oral argument, VDC's assertions appear to be little more than *ipse dixit* contentions.

Simply because a mark is a portion of an earlier mark, our analysis should not stop there. Instead, our inquiry must focus on both marks *in their entirety* to determine whether each conveys the same commercial impression. *See American Paging Inc. v. American Mobilphone Inc.*, 13 USPQ2d 2036, 2039 (TTAB 1989), *aff'd* 923 F.2d 869 (Fed.Cir.1990). Tacking is occasionally permitted where the two marks, though differing slightly in their literal meaning or grammatical presentation, nevertheless possess the same connotation in context. *Laura Scudder's v. Pacific Gamble Robinson Co.*, 136 USPQ 418, 419–20 (TTAB 1962) (Board permitted tacking of the mark "BLUE BIRD" to the use of "BLUE ROBIN" because both marks "create substantially the same general impression, namely, that of a blue-colored bird"). However, that is not the case before us.

▄▄ Here, the Board concluded that under the stringent standards applicable to tacking proposals, the two marks were not legal equivalents because the purchasers "would clearly differentiate them." Although a legal determination is not entitled to deferential review, this conclusion simply has not been shown to be in error. No binding precedent with comparable differences in the marks but with a contrary conclusion has been cited. Nor has the Board's conclusion been demonstrated to rest on an unreasonable interpretation of the language of the marks. Finally, the Board's conclusion necessarily implies a foundational finding that the two marks create differing commercial impressions in the minds of consumers, a finding that has not been proven clearly erroneous.

As the Board noted, tacking in general should be condoned only in "rare instances." *Wear–Guard*, slip op. at 7, citing 1 J. Gilson, *Trademark Protection and Practice*, § 3.03 at 3–48 (1983). And it would be clearly contrary to well-established principles of trademark law to sanction the tacking of a mark with a narrow commercial impression onto one with a broader commercial impression. *See, e.g., Corporate Fitness Programs v. Weider Health and Fitness*, 2 USPQ2d 1682 (TTAB 1987) (Board rejected attempt to "tack" applicant's earlier mark "SHAPE UP" to later mark "SHAPE"); *Viviane Woodard Corp. v. Roberts*, 181 USPQ 840 (TTAB 1974) (prior use of the mark "ALTER EGO" cannot be tacked onto use of mark "EGO"); *Polo Fashions, Inc. v. Extra Special Products, Inc.*, 451 F.Supp. 555, 200 USPQ 161 (S.D.N.Y.1978) ("Marco Polo" may not be tacked onto "Polo").

## II

Because the Board's determination that "CLOTHES THAT WORK" and "CLOTHES THAT WORK. FOR THE WORK YOU DO" are not legal equivalents for tacking purposes is correct as a matter of law, the Board's decision is

AFFIRMED.

PAULINE NEWMAN, Circuit Judge, concurring in the judgment.

The question requiring decision is whether Van Dyne–Crotty, registrant of the mark "CLOTHES THAT WORK", is entitled to the earlier dates of use of "CLOTHES THAT WORK. FOR THE WORK YOU DO", a mark purchased from Horace Small Manufacturing Company, who had been using it since 1974.

I can not agree with the panel majority that the marks are not "legal equivalents" based on their visual and oral appearance and their use with similar goods. In the ordinary environment where consumers see and hear the slogans of trade, there is no significant difference between CLOTHES THAT WORK, the mark used by Van Dyne–Crotty, and CLOTHES THAT WORK with the added clause FOR THE

WORK YOU DO. The appended clause does not change the commercial impression of CLOTHES THAT WORK; it is simply an explanation, a reinforcement—as is often seen in commercial usage. The appended clause does not convert CLOTHES THAT WORK into a different mark, as the panel majority holds.

However, I believe that the facts do not support attributing to Van Dyne–Crotty the dates of use by Horace Small. On this basis I reach the same result as does the panel majority, and thus I concur in the judgment.