## PBI PERFORMANCE PRODUCTS, INC.

v.

## NORFAB CORPORATION.

Civil Action No. 05–4836.

United States District Court, E.D. Pennsylvania.

June 11, 2007.

Nancy D. Wasser, Law Offices of Nancy Wasser, Philadelphia, PA, Robert H. Hammer, III, Robert H. Hammer, III P.C., Charlotte, NC, for PBI Performance Products, Inc.

Anthony S. Volpe, John J. O'Malley, Michael F. Snyder, Volpe & Koenig PC, Philadelphia, PA, for NorFab Corporation.

### MEMORANDUM

HARVEY BARTLE, III, Chief Judge.

Plaintiff PBI Performance Products, Inc. ("PBI") has sued defendant NorFab Corporation ("NorFab") in a three count complaint. PBI claims: (1) patent infringement in violation of 35 U.S.C. § 271, *et seq.*

in Count I; (2) unfair competition and false designation of origin and false and misleading representation in connection with use of a trademark under 15 U.S.C. § 1125(a) in Count II; and (3) trademark dilution in violation of 15 U.S.C. § 1125(c) in Count III. PBI alleges that its patent and trademark rights in PBI MATRIX®, a flame and thermal resistant fabric, were infringed when NorFab offered for sale OMNI–Elite®, a fabric for firefighter's turnout gear, without the consent of PBI.

Now pending before the court is Nor-Fab's motion for summary judgment as to Counts II and III of PBI's complaint and PBI's motion for partial summary judgment as to NorFab's asserted affirmative defenses for Counts II and III. Each party contends that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law under Rule 56 of the Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## I.

PBI is engaged in the research and development of flame and thermal resistant textile fabrics. It makes and sells fibers which can be made into yarn. Although PBI does not itself make yarn or fabric, it designs fabric suitable for particular purposes and markets that fabric directly to the prospective end users. By creating a market for that fabric, PBI also creates demand for its fibers, albeit indirectly, through a manufacturing chain consisting of yarn makers, fabric weavers and garment manufacturers. PBI has developed a fabric which it believes to be particularly suitable for firefighters' turnout gear and has marketed that fabric to the fire service, garment manufacturers and mills. This fabric became known as PBI MA-TRIX®.

In August, 2001, PBI's predecessor in interest, CNA Holdings, Inc., filed a pat-ent application for the PBI MATRIX® fabric. On September 23, 2003, the United States Patent and Trademark Office ("USPTO") granted the application and issued United States Patent Number 6,624,-096 (the "'096 patent") for the "Textile Fabric for the Outer Shell of a Firefighter's Garment." The '096 patent claims a textile fabric consisting of woven material from spun yarns and multi-filament yarns. The fabric is woven in a "rip-stop" construction which is a weave with reinforcing yarns that stop rips from spreading.

On July 15, 2003, PBI registered a trademark in the physical appearance of the PBI MATRIX® material. The mark, Trademark Registration 2,739,268 (the "'268 trademark") is registered on the Supplemental Register rather than the Principal Register. 15 U.S.C. § 1091. The registration is for a trade dress described as "a gold background with a black checkered pattern." The gold background reflects the golden color of the spun yarns while the black checkered pattern results from the relatively less abundant interweaving of a black multi-filament yarn. Between 2001 and 2003, PBI distributed samples of the fabric with this design to potential purchasers. However, PBI decided not to use the fabric with the contrasting black thread after learning that potential purchasers preferred a checkered fabric with a gold background and a contrasting yellow thread. In its complaint as well as its other submissions to this court, PBI consistently refers to the trade dress protected by its '268 trademark as "a gold background with a contrasting checkered pattern," rather than "a gold background with a black checkered pattern," which is the description in the trademark registration. The only "contrasting" color PBI has used commercially is yellow.

In 2003, at NorFab's initiative, NorFab and PBI discussed the possibility of form-

ing a joint venture to make the PBI MA-TRIX® fabric. These discussions never bore fruit. Sometime thereafter, NorFab began to sell a fabric similarly suitable for firefighter's turnout gear called OMNI–Elite®. NorFab describes its fabric as brown in color with a darker brown checkered pattern. PBI contends that OMNI–Elite® infringes both the '096 patent and the '268 trademark.

PBI filed the instant complaint on September 9, 2005. On May 18, 2006, NorFab filed a petition to cancel the trademark registration in suit in the Trademark Trial and Appeal Board ("TTAB") of the USP-TO. NorFab also filed a request in the USPTO on June 2, 2006 for *ex parte* reexamination of the '096 patent. On July 31, 2006, the undersigned placed this action in suspense and stayed further proceedings pending a decision by the USPTO whether to reexamine plaintiff's patent. The USP-TO granted the request for reexamination on September 28, 2006 on the ground that there was a substantial new question of patentability going to each of the patent's 15 claims. On November 11, the TTAB decided sua sponte to suspend the trademark cancellation proceeding pending the outcome of the action pending in this court. Trademark Rule 2.117(a); see also *Dwinell–Wright Co. v. Nat'l Fruit Prod. Co., Inc.*, 129 F.2d 848 (1st Cir.1942). By order dated January 5, 2007, we granted PBI's motion to reopen all proceedings in this court.

## II.

Count II of PBI's complaint alleges unfair competition, false designation of origin and false and misleading representation based on NorFab's marketing and sale of its OMNI–Elite® fabric, in violation of § 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125. The Act provides, in pertinent part, that:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

NorFab asserts that the undisputed facts demonstrate that PBI cannot make out a claim for unfair competition in connection with the '268 trademark for the following reasons: (1) PBI does not have standing to assert the alleged trade dress because it does not own it [1]; (2) the alleged

---

**1.** Despite NorFab's characterization, its argument regarding the ownership of the '268 trademark does not speak to whether PBI has standing to bring the instant case. Rather, NorFab's argument pertains to whether PBI can make out its claim under § 43(a) as a matter of law. 15 U.S.C. § 1125(a); *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 192 (3d Cir.1990); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir.2000). When a plaintiff's standing is challenged, it should ordinarily be considered as a threshold matter. However, we will not address it here as we do not perceive it to have been properly raised.

trade dress is functional as a matter of law; (3) there is no likelihood of confusion between the PBI MATRIX® product and the OMNI–Elite® product; and (4) PBI committed fraud on the USPTO. NorFab additionally argues in its brief that PBI has abandoned any interest PBI had in the trade dress of the '268 trademark. For its part, PBI has moved for partial summary judgment with respect to NorFab's affirmative defenses and asks this court to rule that: (1) the '096 patent is not evidence of the functionality of the '268 trademark; (2) PBI did not commit fraud on the USP-TO in registering the '268 trademark; (3) there is likelihood of confusion between NorFab's OMNI–Elite® product and the '268 trademark; and (4) PBI has not abandoned the '268 trademark.

### III.

We first address both parties' motions on the issue of whether PBI abandoned any rights it had in the design or trade dress which is the subject of the '268 trademark. The design is described on the Supplemental Register as fabric with "a gold background with a black checkered pattern." PBI claims in this action that its trademark protects fabric not only of "a gold background with a black checkered pattern" but also fabric of "a gold background with a contrasting checkered pattern."

■ The Lanham Act provides that a mark will be deemed to be abandoned:

When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

15 U.S.C. § 1127. The two-part test for abandonment has been long recognized: "To establish the defense of abandonment it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon." *U.S. Jaycees v. Phila. Jaycees,* 639 F.2d 134, 138 (3d Cir. 1981) *citing Saxlehner v. Eisner & Mendelson Co.,* 179 U.S. 19, 31, 21 S.Ct. 7, 45 L.Ed. 60 (1900).

The '268 trademark, as noted above, explicitly describes the fabric as having "a black checkered pattern." It is undisputed that PBI initially showed potential purchasers both the black checkered pattern and the yellow checkered pattern. Sometime in or before 2003, after receiving feedback from potential purchasers, PBI chose to manufacture only the design with the yellow checkered pattern. NorFab cites to the following exchange with William Lawson, PBI's Managing Director and Chief Operating Officer, at his Rule 30(b)(6) deposition:

Q: Did you ever advertise or promote a fabric with a gold background and a black checkered pattern?

A: As I said in that period between 2001 and 2003, we showed both variances throughout many shows and through different meetings with different garment makers.

Q: Did you ever have any advertising materials that was showed?

A: Yes, the material that was presented at the show.

Q: And that was distributed at the show?

A: Yes, it was.

Q: Okay. And was it the same material shown again?

A: Yes.

Q: Okay. Do you recall when the last time this material was shown at a

show, the gold background with the black checkered pattern?

A: I don't recall which show or when was the last time that product was shown.

Q: Do you know about which year?

A: It would have probably been—I don't recall.

Q: Would it have been after the 2003 product was introduced?

A: Probably before that.

\*     \*     \*     \*     \*     \*

■ Q: What made you not go forward with selling the gold background with the black checkered pattern?

A: Like I said before, we had gotten feedback from a host of the garment makers and the chain, which was the product they desired. And by the end of the trial period there was more desire for the yellow checked than the black checked. And we didn't want to have too many SKU's running through all the different mills, so we decided to go with that particular pattern.

Lawson Dep. 141:23–143:2; 148:13–24, Mar. 13, 2007. Even assuming that PBI used the black checkered pattern in 2003, more than three years of nonuse had lapsed by March of 2007, when Lawson was deposed. 15 U.S.C. § 1127. Thus, NorFab has successfully established the statutory presumption of PBI's abandonment of the design set forth in the '268 trademark.[2]

PBI does not dispute that its only use of the black checkered fabric was as display samples in advertisements to potential purchasers. Nor does PBI contend that it has ever produced a commercial product using the design with the black checkered pattern. Significantly, PBI does not assert that it has ever used the black checkered pattern for any purpose since 2003. Finally, it cites no evidence of intent to resume its use.[3] On the contrary, PBI made the considered decision to reject the design with the black checkered pattern because it was less appealing to potential purchasers. PBI has thus failed to dispel the presumption that it abandoned its rights in the design described by the '268 trademark.

PBI attempts to save its trademark by arguing that it can be deemed to include not only fabric consisting of "a gold background with a black checkered pattern" but also fabric consisting of "a gold background with a contrasting checkered pattern." PBI makes the argument even though it has only used a yellow contrasting thread. PBI contends that the distinctive character of the design is the contrasting grid. According to PBI, because that feature remains constant, the change of the contrasting color from black to another

---

**2.** PBI cites additional testimony from the Lawson deposition for the proposition that PBI has continuously used and never intended to abandon its trademark. That testimony, however, only relates to PBI's use of the "contrasting grid pattern," not the black checkered pattern. Lawson Dep. 183:17–24, Mar. 13, 2007.

**3.** PBI does suggest that the filing of the instant lawsuit should be taken as evidence that it has not intended to abandon the '268 trademark. The filing of a lawsuit, however, is only an indication that the plaintiff intends to protect its rights to the trademark, not that

the plaintiff intends to *resume use of the mark.* "Ordinarily, a lawsuit against an infringing user is not a sufficient excuse for failure to use a mark. A lawsuit does not substitute for the required use of the mark in the marketplace." *McCarthy on Trademarks* § 17:11 at 17–19; *see also Stetson v. Howard D. Wolf & Assoc.*, 955 F.2d 847, 851 (2d Cir.1992). We note that even if filing this lawsuit did demonstrate PBI's intent to resume use of the trademark, PBI's complaint only accuses NorFab of infringing the "contrasting checkered pattern" rather than "a black checkered pattern."

color such as yellow does not adversely affect the force and validity of its trademark.

■ A change in the form of a mark can be protected only if the distinctive characteristics of the mark before and after the alteration maintain the same, continuing commercial impression. *See McCarthy on Trademarks* § 17–26 at 17–46.5. This test has been applied with increasing rigor. *Id.*

> The previously used mark must be the legal equivalent of the mark in question or indistinguishable therefrom, and the consumer should consider both as the same mark. . . . [E]ven if the two marks are confusingly similar, they still may not be legal equivalents. Instead, the marks must create the same, continuing commercial impression and the later mark should not materially differ from or alter the character of the [first] mark . . . .

*Van Dyne–Crotty, Inc. v. Wear–Guard Corp.*, 926 F.2d 1156, 1159 (Fed.Cir.1991) (internal citations and quotations omitted). *See also Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620 (6th Cir. 1998); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir.1999).

Many cases have found that modified marks were not legal equivalents of the original trademark although few cases have considered the application of continuing commercial impressions to picture marks such as we have here. Courts of Appeals have cited to each of the following as examples of amendments to marks that have created different commercial impressions: "PRO–KUT" and "PRO–CUTS," *Pro–Cuts v. Schilz–Price Enters., Inc.*, 27 U.S.P.Q.2d 1224, 1227 (T.T.A.B.1993); "AMERICAN MOBILPHONE" and "AMERICAN MOBILPHONE PAGING," *American Paging Inc. v. American Mobilphone Inc.*, 13 U.S.P.Q.2d 2036, 2038–39

(T.T.A.B.1989); "SHAPE UP" and "SHAPE," *Corporate Fitness Programs v. Weider Health and Fitness*, 2 U.S.P.Q.2d 1682 (T.T.A.B.1987); and "EGO" and "ALTER EGO," *Viviane Woodard Corp. v. Roberts*, 181 U.S.P.Q. 840 (T.T.A.B.1974). *See Van Dyne–Crotty,* 926 F.2d 1156; *Data Concepts,* 150 F.3d 620; *Brookfield Commc'ns,* 174 F.3d 1036. Although these examples come from word marks rather than pictorial marks, they demonstrate the strict application with which the same, continuing commercial impression rule is applied:

One court considering a pictorial trademark did reject the alleged infringer's claims of abandonment when it found that a corporate logo which had been changed from a realistic lion to a stylized drawing of the same lion created a continuing commercial impression. *Dreyfus Fund, Inc. v. Royal Bank of Canada,* 525 F.Supp. 1108, 1115 (S.D.N.Y.1981). The plaintiff in *Dreyfus* changed designs when it switched from television to print advertisements because the picture of the realistic lion from television could not be easily used and printed in the relatively small format of the print advertisements. The *Dreyfus* court concluded that the lion was clearly the distinguishing characteristic of the mark and its character was not altered by the change. *Id.* In reaching that conclusion, the court emphasized: "In this case, the user has only recently changed the form of its marks, and for a reason that lends no support to an alleged lack of resolve to maintain the strength of its older forms." *Id.* at 1115.

In the present case, the change from a black checkered pattern to the use of a yellow checkered pattern is not an insignificant one. The swatches of fabric made from the different colored materials are markedly distinct. Indeed, if they were not so, there would be no explanation for

PBI's actions when it chose one design over the other after seeking input on that very question from potential purchasers. These potential purchasers obviously recognized a distinction between the two fabric samples when they informed PBI that they preferred the yellow checkered pattern to the black checkered pattern. Unlike the stylistic changes made to the lion in *Dreyfus*, the change in the color in the PBI MATRIX® fabric is integral to the trade dress as described. Additionally, and in contrast to the situation in *Dreyfus*, PBI's asserted reason for making the change to its fabric shows a decided lack of resolve in maintaining an interest in the old form of its trade dress.

In sum, PBI has abandoned any rights it had in the '268 trademark which describes fabric as having "a gold background with a black checkered pattern." Furthermore, PBI's attempt to expand its trademark protection from "a black checkered pattern" to "a contrasting checkered pattern" is not a change that provides "the same, continuing commercial impression." *Van Dyne–Crotty*, 926 F.2d at 1159. The mark as described by PBI is materially different from and alters the character of the original mark by seeking protection not simply for "a black checkered pattern" but for a checkered pattern including virtually any color of the rainbow. *Id.* Accordingly, PBI's attempted modification of the '268 trademark does not save it from abandonment.[4] As a result, we need not reach either party's other arguments.

We will grant the motion of defendant NorFab for summary judgment with re-

spect to Count II of PBI's complaint, which alleges federal unfair competition and false designation of origin and false and misleading representation under 15 U.S.C. § 1125(a).[5] PBI's motion for partial summary judgment will be denied.

## IV.

NorFab also moves for summary judgment as to PBI's dilution claim on the ground that PBI's trademark is not famous, and thus cannot be the basis for a claim of dilution. Since PBI has abandoned the trademark as described in the '268 registration, we need not reach the question of whether the trademark is famous or otherwise subject to a claim of dilution. We will grant NorFab's motion for summary judgment with respect to Count III of PBI's complaint, which alleges trademark dilution under 15 U.S.C. § 1125(c).

## *ORDER*

AND NOW, this 11th day of June, 2007, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of plaintiff PBI Performance Products, Inc. for partial summary judgment (Docket No. 56) is DENIED;

(2) the motion of defendant NorFab Corporation for summary judgment as to Counts II and III of plaintiff's complaint (Docket No. 67) is GRANTED; and

(3) judgment is entered in favor of defendant NorFab Corporation and against

---

4. We also note that on December 1, 2006, shortly after NorFab filed its petition to cancel the supplemental registration with the TTAB, PBI filed a new trademark registration for a design consisting of "a gold background with a contrasting grid."

5. In Count II of its complaint, PBI also alleges that NorFab infringed its registered trade-

mark in a logo consisting of the words "PBI MATRIX" and a picture of a flame exhibited in a highly stylized fashion. This logo is placed on PBI MATRIX® fabric and is the subject of a separate trademark registration, numbered 2,977,768. NorFab cites to undisputed evidence demonstrating that PBI has admitted that NorFab has never infringed the '768 trademark.

plaintiff PBI Performance Products, Inc. with respect to Counts II and III of plaintiff's complaint.