THIS OPINION IS A
PRECEDENT OF
THE TTAB

Mailed: August 26, 2010

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Brouwerij Bosteels
_____

Serial No. 77357895
_____

David B. Kirchstein of Schiffmiller & Pieroni, P.C. for Brouwerij Bosteels.

Jennifer M. Martin, Trademark Examining Attorney, Law Office 116 (Michael Baird, Managing Attorney).
_____

Before Hairston, Bergsman and Wellington, Administrative Trademark Judges.

Opinion by Hairston, Administrative Trademark Judge:

On December 21, 2007 Brouwerij Bosteels, a Joint Stock Company of Belgium, filed an application to register as a trademark on the Principal Register the following:



for "beer" in International Class 32.[1]

The trademark examining attorney refused registration under Sections 1, 2 and 45 of the Trademark Act on the ground that applicant's alleged mark (also referred to herein as "beer glass and stand with wording and scrollwork" or "beer glass and stand") does not function as a mark. Specifically,

---

[1] Application Serial No. 77357895, alleging December 31, 1980 as the date of first use and May 31, 1983 as the date of first use in commerce. Applicant subsequently filed an amendment describing the alleged mark as follows: "The mark consists of a configuration of product packaging for the goods." Furthermore, we note that the wording on the glass is "PAUWEL KWAK"; and the wording on the stand is: "OP UW GEZONDHEID;" "PAUWEL KWAK;" "A VOTRE SANTE;" and "MOD.DEP." Applicant has offered the following translation: "The foreign wording in the mark translates into English as follows: The English translation of 'OP UW GEZONDHEID' in the mark is on your health. The English translation of 'A VOTRE SANTE' is to your health. The term 'MOD.DEP.' is an abbreviation of Modèle Déposé, the English translation of which is registered design." Applicant has disclaimed "MOD.DEP." and states that the name PAUWEL KWAK does not identify a living individual.

the examining attorney stated that the alleged mark "is merely a glass and does not serve as product packaging for the applicant's beer."  (4/2/2008 Office Action)  Applicant responded to the refusal, arguing that the alleged mark is not merely a glass, but rather consists of a flask, flask holder/stand, scrollwork and wording.  Further, applicant argued that the alleged mark is a configuration of the product packaging for applicant's goods, and that such configuration is unique and distinctive.  The examining attorney, however, was not persuaded by applicant's arguments in support of registration. After another office action refusing registration and applicant's response thereto, the examining attorney finally refused registration of the alleged mark on the ground that it does not function as a mark. Applicant appealed.  Applicant and the examining attorney filed briefs, and applicant filed a reply brief.

Shortly thereafter, the examining attorney requested a remand of the application because she determined that an issue not involved in the appeal may render the alleged mark unregistrable. Specifically, the examining attorney stated in the

request for remand that in the event the alleged mark is found to be product packaging for applicant's goods, applicant must disclaim the configuration of the beer glass and stand because it is a nondistinctive configuration that is not registrable on the Principal Register without sufficient proof of acquired distinctiveness.  The Board granted the remand request.  Prior to the examining attorney's issuing an office action, however, applicant submitted an amendment to the application seeking, in the alternative, registration of the alleged mark as a whole under Section 2(f) along with a declaration asserting that the alleged mark has become distinctive of the goods as a result of substantially exclusive and continuous use in interstate commerce on the goods for at least five years. Notwithstanding such amendment, the examining attorney issued the contemplated office action and, citing Sections 1, 2 and 45 of the Act, stated that in the event the alleged mark is found to be product packaging for applicant's goods, applicant must disclaim the configuration of the beer glass and stand because it is a nondistinctive configuration that is not registrable on the Principal Register

without sufficient proof of acquired distinctiveness. According to the examining attorney, the beer glass and stand is a mere refinement of a commonly-adopted style of beer glass. In addition, the examining attorney found that the declaration asserting five years use was not sufficient to show acquired distinctiveness, and maintained the prior refusal that the alleged mark does not function as a mark.

Applicant traversed the requirement for a disclaimer, and argued that its beer glass and stand is not a mere refinement of a commonly adopted style of beer glass. Furthermore, applicant contended that a disclaimer is not necessary because the alleged mark as a whole has acquired distinctiveness as a result of at least twenty-five years of use. Applicant submitted a new declaration asserting that the alleged mark has become distinctive of the goods as a result of substantially exclusive and continuous use in interstate commerce on the goods for at least twenty-five years. The examining attorney was still not persuaded by applicant's arguments, and she issued an office action wherein (1) registration was again finally refused on the ground that the alleged mark does not function as a mark, (2) in the event

the alleged mark is found to be product packaging, applicant was finally required to submit a disclaimer of the configuration of the beer glass and stand, and (3) the declaration of twenty-five years of use was held not sufficient to show acquired distinctiveness of the alleged mark as a whole. Both applicant and the examining attorney then filed supplemental briefs.

Summary of the Examining Attorney's Arguments and Evidence

In maintaining the refusal that the alleged mark does not function as a mark, the examining attorney contends that the alleged mark would be perceived by purchasers as a mere serving suggestion, and not as an indicator of the source of applicant's goods. Furthermore, the examining attorney maintains that the alleged mark does not function as a mark for applicant's beer because the beer "does not reside" in the alleged mark. (9/9/2009 Office action). Rather, applicant must rely on bartenders to serve the beer in the alleged mark. The examining attorney also takes issue with applicant's contention that the alleged mark is a configuration of the product

packaging for applicant's goods.  Specifically, the examining attorney maintains that:

> Product packaging is the "form in which product is processed or wrapped and labeled."  The mark consists of a glass and its holder/stand.  The glass does not contain a lid or top of any sort and the beer is not packaged by the applicant in the glass.  The applicant has not provided any evidence to show that the proposed mark is actually product packaging or that the applicant controls how the beer is sold in the glass.  (Citations omitted)

(Brief, unnumbered pp. 4-5)

With regard to the contention that the beer glass and stand "consist of a nondistinctive configuration of packaging for the goods," the examining attorney argues that such configuration is a mere refinement of "a commonly-adopted style of beer glass" known as a "yard of ale glass," and the glass and stand must therefore be disclaimed.  (7/21/2009 Office action, p. 1)  In this regard, the examining attorney has submitted materials downloaded from the Internet showing over ten examples of products described as Yard, Half Yard, or Foot of Ale Glass with stand.  Reproduced below are several examples of online images of these products that the Trademark Examining Attorney placed into evidence.  (attachments to 7/21/2009 Office action):


978 Lindsay Lane
Lancaster, PA  17601






475 Little Falls Drive
Amery, WI  54001







6 E. Palo Verde Street Suite #3
Gilbert, AZ  85296

---

[2] http://www.thepubshoppe.com/c-42-yard-half-yard-glasses.aspx

[3] http://www.german-toasting-glasses.com/specialty_novelty_glasses.html

[4] http://www.beerglasshopper.com/134yaglwist2.html

[5] http://www.groomsonline.com/BARG-GO40432-p-personalized_beer_pitcher_yard_glasses.html

As to applicant's showing of acquired distinctiveness, the examining attorney maintains that applicant bears a heavy burden to prove that the alleged mark has acquired distinctiveness. The examining attorney contends that applicant cannot rely on its ownership of Registration No. 3479299 (discussed infra) because the mark therein is not the same as the alleged mark involved herein. Furthermore, the examining attorney concludes that the declaration of twenty-five years of use is insufficient, and that direct evidence of acquired distinctiveness is required.

## Summary of Applicant's Arguments and Evidence

It is essentially applicant's position that the alleged mark is a distinctive configuration of the product packaging for its goods and, thus, registrable. In this regard, we note that applicant submitted two specimens with its application which are reproduced below. Applicant characterizes Specimen No. 1 as a photograph and Specimen No. 2 as a point of sale display.





Specimen No. 1                    Specimen No. 2

Applicant argues that the fact that the beer glass in the alleged mark is not capped or sealed has no bearing on whether the alleged mark functions as a mark.  Applicant argues that its alleged mark is similar to many registered marks which consist of a configuration of a bottle or other type of container for the goods.  In support of its contention that the alleged mark functions as a mark, applicant submitted a photograph of a gift set it sells which contains applicant's beer in a bottle along with the beer glass and stand with wording and scrollwork; materials downloaded from third-party websites which contain references to and/or pictures of applicant's beer being served in the beer glass and stand with wording and scrollwork; materials downloaded from applicant's website; and copies of many third-party registrations for marks consisting of configurations of bottles/containers for various goods.

Further, applicant asserts that its alleged mark has acquired distinctiveness in view of the facts that it has used the alleged mark in the United States for over twenty-five years, and it is the owner of Registration No. 3479299 for the mark[6] shown below for beer and ale:



Thus, applicant maintains that it is not necessary to disclaim the configuration of the beer glass and stand apart from the alleged mark. In support of its claim of acquired distinctiveness, applicant submitted the declaration of its attorney, David Kirchstein, stating that the alleged mark has become distinctive through substantially exclusive and continuous use in the United States for at least twenty-five years, and a copy of its Registration No. 3479299.

---

[6] The mark in this registration is described as follows: "The mark consists of a representation of a uniquely shaped glass with wide mouth, a thin neck and a bulbous bottom in a holder."

Preliminary and Evidentiary Matters

First, we note that attached to applicant's supplemental reply brief are Exhibit Nos. 9-13.  Exhibits attached to a brief that were not made of record during examination (or, in this case, during examination on remand), are untimely, and will not be considered.  *See Trademark Trial and Appeal Board Manual of Procedure (TBMP) §1203.02 and §1207.01 (2d ed. rev. 2004).*  In view thereof, these exhibits have not been considered.

Second, applicant argues that the examining attorney's analysis of the issues in this case is flawed because she fails to recognize that the alleged mark consists of more than a glass.  Although the examining attorney, in her office actions and briefs on the case, occasionally refers to the alleged mark as simply a glass or beer glass, the final refusal/requirement is clearly based on a consideration of the alleged mark as whole, i.e., the beer glass and stand with wording and scrollwork.

Third, in view of applicant's alternative amendment to the application to seek registration of the alleged

mark as a whole under the provisions of Section 2(f),
thereby conceding (for the purpose of applicant's
alternative argument in support of registration) that the
alleged mark as a whole is not inherently distinctive,[7] the
issues in this case are (1) whether the alleged mark is
inherently distinctive and, if not, (2) whether applicant
has demonstrated that the alleged mark has acquired
distinctiveness.  Thus, we need not consider the examining
attorney's requirement for a disclaimer of the beer glass
and stand apart from the alleged mark.

### Background For Analysis

To provide context for our consideration of the
refusal of registration, we begin by noting that applicant
describes the alleged mark as follows:  "The mark consists
of a configuration of product packaging for the goods."
It is not exactly clear what applicant intends by the
wording "configuration" of product packaging.  However, in
view of the drawing of the alleged mark, which appears to
be a photograph of the beer glass and stand with wording

---

[7] We note that applicant did not expressly state that it was
arguing that the alleged mark had acquired distinctiveness in
the alternative.  However, we consider applicant's amendment to
seek registration of the alleged mark under the provisions of
Section 2(f) to be in the alternative because it was filed after
the examining attorney requested a remand of the application to
consider a new issue.

and scrollwork, we interpret "configuration of product packaging" to mean "three dimensional packaging."

In addition, we deem the alleged mark to be trade dress in the nature of product packaging, not trade dress in the nature of a product configuration. This is because the identified product applicant seeks to register the alleged mark for is "beer," not a "beer glass and stand with wording and scrollwork."[8] Where, as here, applicant seeks to register trade dress in the nature of product packaging, the question of inherent distinctiveness can be considered. In contrast, this question does not arise where an applicant seeks to register trade dress in the nature of a product configuration. *See Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 54 USPQ2d 1065 (2000) [Trade dress in the nature of a product configuration cannot be inherently distinctive].

Furthermore, we deem it appropriate to construe the identification of goods in the application as necessarily

---

[8] The possibility that a container for a liquid can be either a product or product packaging is acknowledged in *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 54 USPQ2d 1065, 1069-70 (2000) ("a classic glass Coca-Cola bottle, for instance, may constitute packaging for those consumers who drink the Coke and then discard the bottle, but may constitute the product itself for those consumers who are bottle collectors, or part of the product itself for those consumers who buy Coke in the classic glass bottle, rather than a can, because they think it more stylish to drink from the former.")

limited to beer sold in restaurants, bars, pubs, and the like.  We do so because applicant identified the alleged mark as "configuration of product packaging" (underlining added), and the beer glass depicted in the alleged mark is clearly an open, rather than closed, container.  Thus, applicant's beer would be dispensed in the beer glass and stand having wording and scrollwork in restaurants, bars, pubs, and the like.[9]

As indicated *supra*, the examining attorney submitted materials downloaded from the Internet showing examples of products described as Yard, Half Yard, or Foot of Ale Glass with stand.  According to the evidence, these glasses and stands are sold as products in their own right, rather than as packaging for beer or ale.  Although the evidence of these glasses and stands is evidence of the design of products, rather than product package designs, and therefore must be considered unlike

---

[9] We note that applicant states at p. 2 of its Appeal Brief that the beer glass and stand with wording and scrollwork is also "employed to dispense applicant's beer … at home."  In addition, applicant submitted a photograph of a gift set it sells comprising its beer (apparently bottled) and the beer glass and stand with wording and scrollwork.  Presumably, these gift sets may be purchased by consumers.  However, applicant's identification of goods is simply beer; not bottled beer or sets comprising bottled beer and the beer glass and stand with wording and scrollwork.  Thus, for the reasons indicated, it is necessary to read the application's identification as limited to beer sold in restaurants, bars, pubs, and the like where beer in open containers is sold.

applicant's alleged mark in this particular sense, they nonetheless may be considered in determining whether consumers would be likely to find applicant's product packaging to be distinctive, whether inherently or through acquisition of distinctiveness.

To summarize, for purposes of our analysis, we construe the goods in the application as beer sold in restaurants, bars, pubs and the like; we deem the alleged mark to be trade dress in the nature of product packaging; and the issues in this case are whether the alleged mark, i.e., the beer glass and stand with wording and scrollwork, is inherently distinctive or has acquired distinctiveness for beer sold in restaurants, bars, pubs and the like.

Analysis

*Inherent Distinctiveness*

The first issue we address is whether the alleged mark is inherently distinctive such that it functions as a mark. It is important to point out that the mere fact the beer glass in the alleged mark is an open, rather than closed, container does not render the alleged mark not inherently distinctive. In other words, there is no per se rule that an open container cannot be inherently

16

distinctive for the goods served or contained therein.

For example, the "classic glass Coca-Cola bottle" referenced in *Wal-Mart*, would be no less source indicating when served as an open container to a restaurant patron than when pulled as a closed container from a refrigerated display or store shelf by a consumer.  However, closed containers, because they are closed, presumably are suitable for display on store shelves or in other ways in which the container can aid the consumer in choosing between competing products.  *See Wal-Mart*, 54 USPQ2d at 1068 ("a garish form of packaging (such as Tide's squat, brightly decorated plastic bottles for its liquid laundry detergent) may attract an otherwise indifferent consumer's attention on a crowded store shelf").  Thus, consumers may more readily perceive such containers as trademarks for the goods contained therein.

In determining whether the alleged mark is inherently distinctive, we look to the predecessor to our primary reviewing court for guidance.  The Court in the past

> has looked to whether it was a "common" basic shape or design, whether it was unique or unusual in a particular field, [or] whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods[.]

*Seabrook Foods, Inc. v. Bar-Well Foods, Inc.*, 568 F.2d 1342, 196 USPQ 289, 291 (CCPA 1977).

Applying the *Seabrook* test for inherent distinctiveness to the present case, we are not persuaded that consumers would immediately perceive and rely upon the beer glass and stand with wording and scrollwork as an indication of source for applicant's beer sold in restaurant, bars, pubs and the like. The examining attorney's evidence shows that this type of glass and stand for holding beer is common and is known as a Yard, Half-Yard, or Foot of Ale Glass with stand. Moreover, the evidence shows that these other glasses and stands are not being used as source indicators for beer, and are not associated with a specific brand of beer. Rather, in one of the advertisements, the beer glass and stand is touted as a décor item ("displays great in any home bar") and the purchaser is challenged to drink from the glass ("try to drink from this without spilling a drop"). Given these facts, it is reasonable to assume that the public's perception of the alleged mark would be as a mere refinement of this type of beer glass and stand, rather than an inherently distinctive indicator of source for the beer served within it in a bar or restaurant. Consumers who purchase applicant's beer at a restaurant, bar or pub

are likely to view the alleged mark as simply a glass and stand for serving/holding the beer.  This is the case notwithstanding that the alleged mark also includes the name of applicant's beer, PAUWEL KWAK, and other wording and scrollwork.  Stated differently, the mere inclusion of PAUWEL KWAK and other wording and scrollwork on the beer glass and stand does not render the beer glass and stand design bearing the wording and scrollwork inherently distinctive.

As previously noted, applicant submitted a photograph of a gift set it sells which contains applicant's beer (apparently bottled) along with the beer glass and stand with wording and scrollwork.  In addition, applicant submitted materials downloaded from its website, and materials downloaded from third-party websites that contain references to and/or pictures of applicant's beer being served in the beer glass and stand with wording and scrollwork.  At applicant's website is a picture of the alleged mark and above is the following:  "The art of pouring -- You will enjoy a Kwak most in its original Kwak glass, poured in accordance with the rules of the art."  The following are excerpts from the third-party websites, all referring to applicant's KWAT branded beer:

19

A landlord is demanding drinkers hand over a shoe before they get a beer in his Kent pub.  It is to ensure they bring back an elaborate wooden frame and special glass used to serve a Belgian beer.  Kwak beer comes in a ball-shaped glass and the frame is needed to keep it upright;[10]

The most famous aspect of Kwak is the eye-catching glass in which it is supposed to be served.  Kwak has a round bottomed glass that resembles a 'yard of ale', which is held upright in a wooden stand;[11]

Kwak … is the most eye-catching of Belgian beers.  Each Belgian beer has a unique glass out of which it must be served and Kwak has a round bottomed glass that resembles a "yard of ale" and which is held upright in a wooden stand – rather like a piece of scientific apparatus.[12]

Being on the Grote Market in Brugge, and in line with all the tourists who were having the same, we order a 1m Kwak. … what I find fascinating about the Kwak, is the glass it comes in.[13]

The Kwak glass remains to this day one of the most distinctive drinking vessels in Belgium. Served to the client complete with monogrammed wooden stand, it is a familiar sight in Belgium bars, and a popular purchase for homeward-bound tourists.[14]

The bottom of a Kwak glass is rounded so that there comes a point when all the beer rushes into your mouth. … Because glasses like that are quite expensive, in the café Dulle Griet you will be asked to give up a shoe as a deposit.[15]

---

[10] http://www.4to40.com
[11] http://www.nationmaster.com
[12] http://www.economicexpert.com
[13] http://gloriousfoodandwinebelgianbeer.blogspot.com
[14] http://www.expatica.com
[15] http://www.wallywine.com

The fact that applicant's bottled beer and beer glass and stand with wording and scrollwork are packaged and sold together as a gift set fails to persuade us that the beer glass and stand with wording and scrollwork itself, when not sold as a product but used as a container in restaurants, bars, pubs and the like, would be recognized as an inherently distinctive source indicator for applicant's beer. Similarly, the facts that the alleged mark is featured at applicant's website and patrons of bars and pubs are served applicant's beer in the beer glass and stand with wording and scrollwork does not convince us that consumers would view the beer glass and stand with wording and scrollwork as an inherently distinctive source indicator for applicant's beer. Although the references quoted above include the authors' observations about the distinctive nature of applicant's beer glass and stand, two references also note its resemblance to a "yard of ale" glass and stand. Thus, these excerpts support the conclusion that consumers would view the alleged mark as a mere refinement of a Yard of Ale Glass with Stand itself, rather than an inherently distinctive indicator of source for beer sold at restaurants, bars, pubs and the like. Moreover, four excerpts refer to use of the alleged mark outside the

21

United States and, thus, these excerpts are not probative of the impact of the alleged mark on purchasers and potential purchasers in the United States. One of the references comparing applicant's container design to the "yard of ale" glass and stand notes that "[e]ach Belgian beer has a unique glass out of which it must be served." Even if this is so in Belgium, and consumers there have come to distinguish beers by the types of glasses in which they are served, there is no evidence of record to support a conclusion that American consumers of beer would engage in the same process, or even have the opportunity to do so.

Insofar as the third-party registrations for marks consisting of configurations of bottles/containers for various goods are concerned, the Board has often noted that each case must be decided on its own merits. We are not privy to the records of the third-party registration files and, moreover, the determination of registrability of those particular marks by the examining attorneys cannot control our decision in the case now before us. *See In re Nett Designs Inc*., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001). ("Even if some prior registrations had some characteristics similar to [applicant's application], the PTO's allowance of such

prior registrations does not bind the Board or this court.")  We do note, however, that unlike applicant's alleged mark, all but one of the marks in the third-party registrations are configurations of closed, rather than open, containers.  As noted previously, consumers may more readily perceive closed containers as trademarks for the goods contained therein because closed containers presumably are suitable for display on store shelves or in other ways in which the container can aid the consumer in choosing between competing products.  There is no indication whether applicant's open container for beer would be similarly displayed in a restaurant or bar, among other containers for beer.  A consumer of beer in a restaurant or bar may very well not be presented with the container until after the beer has been ordered.

In view of the foregoing, we conclude that the alleged mark is a mere refinement of a common Yard, Half Yard, or Foot of Ale glass with stand and thus falls short of being inherently distinctive for applicant's beer sold in restaurants, bars, pubs and the like.  This is the case notwithstanding the wording and scrollwork included in the alleged mark.

*Acquired Distinctiveness Under Section 2(f)*

Having found that the alleged mark is not inherently distinctive, we next consider whether it has acquired distinctiveness as a source indicator for applicant's goods. In support of its claim of acquired distinctiveness, applicant points to its substantially exclusive and continuous use of the alleged mark for at least twenty-five years, and its ownership of prior Registration No. 3479299.[16]

Turning first to applicant's prior registration, Trademark Rule 2.41(b) provides that ownership of a registration of "the same mark" on the Principal Register may be accepted as prima facie evidence of acquired distinctiveness. In relying on this rule, an applicant is essentially seeking to tack the use of the registered mark to its use of the present mark for purposes of transferring distinctiveness to the new mark. *See In re Flex-O-Glass, Inc.*, 194 USPQ 203 (TTAB 1977). Thus, the analysis used to determine whether applicant's present mark is "the same mark" as its previously registered mark, for purposes of the rule, is the analysis used in tacking cases, i.e., whether the marks are legal equivalents. *See*

---

[16] Applicant claimed ownership and submitted a copy of this registration in a response filed October 1, 2008.

*Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 17 USPQ2d 1866, 1868 (Fed. Cir. 1991). *See also In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 57 USPQ2d 1807, 1812 (Fed. Cir. 2001) and *In re Nielsen Business Media Inc.*, 93 USPQ2d 1545 (TTAB 2010).

To meet the legal equivalents test, the marks must be indistinguishable from one another or create the same continuing commercial impression such that the consumer would consider both as the same mark. *See Van Dyne-Crotty, Inc. v. Wear-Guard Corp.,* 17 USPQ2d at 1868*; and In re Dial-A-Mattress Operating Corp.,* 57 USPQ2d at 1812.

In this case, we find that applicant's previously registered mark shown below,



is not the legal equivalent of the three-dimensional beer glass and stand mark shown below.



The previously registered mark is a two-dimensional design in the nature of a logo. Applicant itself describes the mark as "a <u>representation</u> of a uniquely shaped glass with a wide mouth, a thin neck and a bulbous bottom in a holder." (underlining added) In contrast, the alleged mark that is the subject of the present application consists of a three-dimensional beer glass and stand, and includes wording and scrollwork not found in the previously registered mark. Thus, applicant is not entitled to tack the use of the registered mark to its use of the alleged mark herein for purposes of transferring distinctiveness to such alleged mark. *See e.g., In re Nielsen Business Media, Inc*., 93 USPQ2d at 1547 [THE BOLLYWOOD REPORTER and THE HOLLYWOOD REPORTER "are not

legal equivalents because they have different meanings and engender different commercial impressions."]

We turn next to applicant's claim of acquired distinctiveness based on at least twenty-five years use of the alleged mark in the United States. In connection with its claim of acquired distinctiveness based on length of use, we will again consider the materials downloaded from applicant's website and the third-party websites that contain references to and/or pictures of applicant's beer being served in the beer glass and stand with wording and scrollwork. The burden of proving acquired distinctiveness in an ex parte proceeding rests with applicant. *Yamaha Int'l. Corp. v. Hoshino Gakki Co. Ltd.*, 840 F.2d 1572, 6 USPQ2d 1001, 1004 (Fed. Cir. 1988). Acquired distinctiveness may be shown by direct evidence and/or circumstantial evidence. Direct evidence, which includes actual testimony, declarations or surveys of consumers as to their state of mind, is not of record in this case. Circumstantial evidence is evidence from which consumer association might be inferred, such as years of use, extensive sales and advertising, and any similar evidence showing wide exposure of the mark to consumers. *In re Ennco Display Systems Inc.*, 56 USPQ2d 1279, 1283 (TTAB 1983). *See also J. Thomas McCarthy, McCarthy on*

27

*Trademarks and Unfair Competition*, Sections 15:30; 15:62 (4th ed. updated 2010).

There is no fixed rule for the amount of proof necessary to demonstrate acquired distinctiveness. However, as is the case with highly descriptive terms which may nevertheless acquire distinctiveness, we note that the lesser the degree of distinctiveness, the heavier the burden to prove trade dress in the nature of product packaging has acquired distinctiveness. *Cf. Yamaha International Corp. v. Hoshino Gakki Co., Ltd.*, 6 USPQ2d at 1008. In this case, the record shows that other entities market as goods in trade Yard, Half Yard, or Foot of Ale glasses and stands which are highly similar to applicant's alleged mark. Thus, consumers who order applicant's beer in a restaurant, bar, pub or the like would not view applicant's alleged mark as unique or particularly unusual. We agree with the examining attorney that given the nature of the alleged mark, i.e., it is highly similar to a specific type of glass and stand for serving and holding beer, a claim of twenty-five years of use is insufficient to prove acquired distinctiveness, especially without evidence of the extent of such use. Insofar as applicant's website is concerned, although the alleged mark is displayed thereon, there is no information

28

with respect to the number of visitors to the website.  In the absence thereof, we are unable to determine whether a significant number of people in the United States have even viewed the alleged mark at the website.  With respect to the third-party website evidence, as noted previously, four of the excerpts refer to use of the alleged mark outside the United States and, thus, these excerpts are not probative of whether the alleged mark has acquired distinctiveness among purchasers in the United States.  With respect to the remaining two excerpts, one characterizes the beer glass as "eye-catching" and another as "unique."  However, these two excerpts hardly support a finding that a significant number of consumers have come to recognize the alleged mark as an indication of the source of applicant's beer sold at restaurants, bars, pubs and the like.  In this case, there is simply no evidence that the alleged mark has ever been promoted by applicant as its trademark in the United States using "Look for …" promotions, and the record is devoid of evidence that anyone other than applicant regards a beer glass and stand with wording and scrollwork as a trademark for beer sold at restaurants, bars, pubs and the like.

Accordingly, given the nature of the alleged mark, more evidence would be necessary to show that it has

become distinctive of applicant's goods, e.g., affidavits or declarations from the ultimate purchasers and/or unsolicited publicity and references in the media.

<u>Conclusion</u>

In view of the foregoing, we conclude that the alleged mark is not inherently distinctive, and in the absence of sufficient evidence that the purchasing public relies upon the beer glass and stand with wording and scrollwork, as a whole, as a means of identifying applicant's beer sold at restaurants, bars, pubs and the like, we are not persuaded that the alleged mark has acquired distinctiveness and that it functions as a trademark for applicant's goods.

**Decision:** The refusal to register on the ground that the alleged mark does not function as a mark or, stated differently, is not inherently distinctive is affirmed, and applicant has not met its burden of proving acquired distinctiveness.